☜AO 440 (Rev. 8/01) Summons in a Civil Action

# UNITED STATES DISTRICT COURT

Southern        District of        New York

SAFEWAY ENVIRONMENTAL CORP.

V.

AMERICAN SAFETY INSURANCE COMPANY

**SUMMONS IN A CIVIL ACTION**

**08 CV 6977**

CASE NUMBER:

**Judge Pauley**

TO: (Name and address of Defendant)

American Safety Insurance
100 Galleria Parkway, Suite 700
Atlanta, GA 30339

**YOU ARE HEREBY SUMMONED** and required to serve on PLAINTIFF'S ATTORNEY (name and address)

Jeffrey S. Ettenger, Kaufman Dolowich & Voluck, LLP
135 Crossways Park Drive, Suite 201
Woodbury, NY 11797

an answer to the complaint which is served on you with this summons, within _____ 30 _____ days after service of this summons on you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. Any answer that you serve on the parties to this action must be filed with the Clerk of this Court within a reasonable period of time after service.

J. MICHAEL McMAHON

CLERK

(By) DEPUTY CLERK

AUG 0 5 2008

DATE

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

SAFEWAY ENVIRONMENTAL CORP.,    :    Docket No.

              Plaintiff,    :    **COMPLAINT**

    -against-    :    JURY DEMAND

AMERICAN SAFETY INSURANCE
COMPANY,    :
              Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

Plaintiff Safeway Environmental Corp. ("Safeway"), by and through its attorneys Kaufman Dolowich & Voluck LLP, as and for its Complaint, alleges as follows, upon information and belief:

## PARTIES

1.    Plaintiff is a corporation duly organized and existing under and by virtue of the laws of the State of New York, with offices and a principal place of business located at 1379 Commerce Avenue, Bronx, New York 10461.

2.    Defendant American Safety Insurance Company ("ASI") is a corporation duly organized and existing under and by virtue of the laws of the State of Georgia, having a principal place of business located in Atlanta, Georgia.

## JURISDICTION AND VENUE

3.    ASI does business in the State of New York underwriting various forms of insurance, including but not limited to commercial general liability insurance.

4.    ASI is licensed by the State of New York Insurance Department to underwrite insurance policies for New York residents and corporations.

5.     This court has jurisdiction over this matter pursuant to 28 U.S.C. §1332. The parties are in complete diversity of citizenship. The controversy exceeds the statutory minimum for a claim based upon diversity of citizenship.

6.     This action properly lies in the United States District Court for the Southern District of New York, pursuant to 28 U.S.C. §1391 because the plaintiff's principal place of business is in the County of Bronx, State of New York.

## STATEMENT OF FACTS

7.     ASI issued a Commercial General Liability Insurance Policy ("The Policy") to Safeway for the policy period of December 1, 2004 to December 1, 2005, under policy number POl 04-3524-003. A copy of this insurance policy is annexed hereto as Exhibit "A".

8.     The policy was extended to include insurance coverage through January 31, 2006.

9.     The policy premium paid by Safeway was based upon gross revenues received by Safeway during the applicable policy period.

10.    Safeway paid ASI policy premiums as an advance pursuant to Section IV(5)(b) of The Policy.

11.    Pursuant to Section IV(5)(c) of The Policy, Safeway maintained records in order for ASI to perform an audit of Safeway's books and records so that ASI could determine the appropriate policy premium that should have been paid.

12.    ASI has performed no less than three audits of Safeway's books and records.

13.    ASI has determined that Safeway has made overpayment of $83,313.99 relating to the Policy premiums paid for the policy period.

14.    ASI's auditors have made material miscalculations in their audit.

15.    Based upon Safeway's actual revenue for projects that were insurable by ASI during the policy period, Safeway has made overpayments on its policy premiums in the amount of $226,325.00.

16.    Despite demand for re-payment of over-paid policy premiums, ASI has failed to make payment to Safeway.

17.    As a result of ASI's failure to re-pay Safeway for over-paid policy premiums, Safeway has been damages in an amount no less than $226,325.00, plus interest and applicable fees and costs.

AS AND FOR A FIRST CLAIM FOR RELIEF<br>FOR BREACH OF CONTRACT

18.    Safeway repeats and realleges each and every allegation set forth in paragraphs 1 through 16 enumerated above.

19.    Safeway and ASI entered into an insurance agreement pursuant to the aforementioned Policy for the aforementioned policy period.

20.    The Policy required Safeway to advance the payment of insurance premiums.

21.    Policy premiums were based upon Safeway's gross revenues for insurable projects.

22.    The Policy required ASI to re-pay Safeway for premiums that were over-paid based upon actual revenues during the policy period.

23.    ASI has breached the insurance contract with Safeway, as it has failed to re-pay policy premiums that were over-paid by Safeway.

24.    ASI has failed to re-pay policy premiums, despite repeated requests by Safeway.

25.     As a result of ASI's breach of the insurance contract, Safeway has been damaged in an amount no less than $226,325.00, plus applicable interest and other applicable fees and costs.

## AS AND FOR A SECOND CLAIM FOR RELIEF
## (BAD FAITH)

26.     Safeway repeats and realleges each and every allegation set forth in paragraphs 1 through 24 enumerated above.

27.     Despite repeated requests for re-payment of over-paid premiums, ASI has refused to re-pay Safeway.

28.     Safeway has advised ASI that certain projects were not insured by ASI and thus cannot be included in the calculation of gross revenues to determine the appropriate policy premium.

29.     Despite the foregoing, ASI has refused to re-calculate its figures and re-pay Safeway for appropriate over-paid premiums.

30.     Safeway has advised ASI that its general calculations of gross revenues during the policy period is in error, but despite this, ASI has refused to re-calculate its figures and re-pay Safeway for appropriate over-paid premiums.

31.     ASI has acted in bad faith in failing to re-pay over-paid premiums due to Safeway.

32.     As a result, ASI is liable for punitive and/or exemplary damages in an amount to be calculated by the Court.

WHEREFORE, Plaintiff Safeway Environmental Corp. demands judgment against Defendant as follows:

(i)     on its first causes of action in an amount of no less than $226,325.00 with interest and applicable fees and costs;

(ii)    on a second cause of action for punitive and/or exemplary damages in an amount to be calculated by the Court; and

(iii)   for the costs and disbursements of this action, and for any other and further relief that this court may deem just and proper.

Dated: Woodbury, New York
      July 28, 2008

                        Kaufman Dolowich & Voluck LLP
                        Attorneys for Plaintiff
                        SAFEWAY ENVIRONMENTAL CORP.

By: _____
                Andrew Richards, Esq.
                Jeffrey S. Ettenger, Esq.
                135 Crossways Park Drive, Suite 201
                Woodbury, New York  11797
                (516) 681-1100

ND: 4830-7436-1346, v. 1

# EXHIBIT A

**AMERICAN SAFETY CASUALTY INSURANCE COMPANY**
**1845 THE EXCHANGE ♦ ATLANTA, GA 30339**
**☎ (800) 388-3647 ♦ FAX ☎ (770) 916-0618**

## COMMERCIAL GENERAL LIABILITY INSURANCE (OCCURRENCE)
## CONTRACTOR'S POLLUTION LIABILITY (OCCURRENCE)
### POLICY DECLARATIONS

Policy Number:     **POL 04-3524-003**     Renewal of:  **POL 03-3524-002**

Named Insured:     **Safeway Environmental Corp.**

Mailing Address:   **1379 Commerce Avenue, Bronx, NY 10461**

Policy Period:     **December 01, 2004**     To:   **December 01, 2005**

at 12:01 A.M. Standard Time at your mailing address shown above.

### LIMITS OF INSURANCE

| | |
|---|---:|
| General Aggregate Limit | $10,000,000 |
| Products-Completed Operations Aggregate Limit | $10,000,000 |
| Personal and Advertising Injury Limit | ~~$100,000,000~~ |
| Each Occurrence Limit | $10,000,000 |
| Fire Damage Legal Limit | $50,000 |
| Medical Expense Limit | $5,000 |

*(handwritten: H. 13208 % 0  Rate ; 1/3 ; re, 00 0,000)*

### SELF-INSURED RETENTION

Self-Insured Retention                              $50,000 Per Occurrence

### FORM OF BUSINESS

Form of Business:              Organization (other than a Partnership or Joint Venture)

### PREMIUM

| | |
|---|---:|
| Minimum Earned Premium | $84,000 |
| Estimated Policy Premium | $1,008,500 |
| Deposit Premium | $1,008,500 |

### FORMS AND ENDORSEMENTS

Forms and Endorsements applying to this Coverage Part and made part of this policy at the time of issue:

| | | |
|---|---|---|
| ASCIC 98 00 04 00 | CG 26 24 08 92 | ASCIC 98 01 11 99 |
| ASCIC 98 03 12 99 | ASCIC 98 04 11 99 | ASCIC 98 05 11 99 |
| ASCIC 98 06 11 99 | ASCIC 98 11 11 99 | ASCIC 98 13 11 99 |
| ASCIC 98 28 11 99 | ASCIC 98 34 11 99 | ASCIC 98 39 11 99 |
| ASCIC 98 40 10 99 | ASCIC 98 44 12 99 | ASCIC 98 66 08 02 |
| ASCIC 98 67 10 02 | ASCIC 98 100 04 02 | Special Endorsement A |
| Special Endorsement B | Special Endorsement C | |

RECEIVED JAN 24 2005



**AMERICAN SAFETY**
**CASUALTY INSURANCE COMPANY**
**1845 THE EXCHANGE ♦ ATLANTA, GA  30339**
**☎ (800) 388-3647 ♦ FAX ☎ (770) 916-0618**

---

## COMMERCIAL GENERAL LIABILITY INSURANCE (OCCURRENCE)
## CONTRACTOR'S POLLUTION LIABILITY (OCCURRENCE)
### POLICY DECLARATIONS

---

Policy Number: **POL 04-3524-003**

Named Insured: **Safeway Environmental Corp.**

Policy Period: **December 01, 2004**  To:  **December 01, 2005**

at 12:01 A.M. Standard Time at your mailing address shown above.

---

### RATES

| Classification(s) | Rating Basis | Exposure | Rate | Expected Premium |
|---|---|---|---|---|
| Asbestos Abatement - Commercial | Revenue | $10,750,000 | 4.13208% | $444,199 |
| Demolition - Over Two Stories | Revenue | $5,000,000 | 4.13208% | $206,604 |
| Lead Abatement - Commercial | Revenue | $3,250,000 | 4.13208% | $134,293 |
| Demolition - Non-Structural (Interior Remodel) | Revenue | $2,500,000 | 4.13208% | $103,302 |
| Storage Tank Cleaning | Revenue | $1,250,000 | 4.13208% | $51,651 |
| Emergency Response | Revenue | $1,000,000 | 4.13208% | $41,321 |
| PCB - Light Ballast Removal | Revenue | $250,000 | 4.13208% | $10,330 |
| Microbiological Decontamination - Commercial | Revenue | $1,000,000 | 1.68% | $16,800 |

This policy is subject to audit. 25,800,000

**\*This is subject to a minimum premium of $1,000 for mold related revenues and is subject to additional premium at audit based on the individual mold rate.**

IN CONSIDERATION OF THE PAYMENT OF THE PREMIUMS, AND SUBJECT TO ALL THE TERMS, CONDITIONS AND EXCLUSIONS OF THIS POLICY, WE AGREE TO PROVIDE THE INSURED WITH THE INSURANCE AS STATED IN THIS POLICY.

Countersigned by: _____     Date: _____December 01, 2004_____
*Authorized Representative*

THESE DECLARATIONS TOGETHER WITH THE COMMON POLICY CONDITIONS, COVERAGE FORM(S) AND ENDORSEMENTS ISSUED TO FORM A PART THEREOF, COMPLETE THE ABOVE REFERENCED POLICY.

**NOTICE: THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK STATE INSURANCE DEPARTMENT. HOWEVER, SUCH FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.**

# AMERICAN SAFETY CASUALTY INSURANCE COMPANY

## ASCIC 98 00 04 00

## COMMERCIAL GENERAL LIABILITY COVERAGE FORM

### *IN THIS POLICY, CLAIM RELATED COSTS AND SUPPLEMENTARY PAYMENTS REDUCE THE LIMITS OF INSURANCE*

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the Company providing this insurance.

The word "insured" means any person or organization qualifying as such under SECTION II - Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning.    Refer to SECTION V - Definitions.

### SECTION I - COVERAGES

### COVERAGE A - BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1. **Insuring Agreement.**
   a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any "claim" or "suit" that may result. But:
      (1) The amount we will pay for damages is limited as described in SECTION III - Limits Of Insurance; and
      (2) Our right and duty to defend end at such time when allegations potentially covered by the policy are either dropped or dismissed with prejudice, or when we have used up the applicable limit of insurance in the payment of judgments, in the payment of settlements, or in our offer to settle or the tender to the potential plaintiff of the applicable limit of

insurance under COVERAGES A. or B., medical expenses under COVERAGE C., or any other "claim related costs". Once the applicable limit of insurance has been exhausted, we shall not be obligated to defend or continue to defend any "claim" or "suit" or pay any damages, "claim related costs" or supplementary payments. We have the right to seek reimbursement for any "claim related costs" we incur in connection with any "claim" or "suit" that we defend which is found by judicial determination or by mutual agreement of the parties to this policy to not be covered under the policy.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments - Coverages A and B.

   b. This insurance applies to "bodily injury" and "property damage" only if:
      (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";
      (2) The "bodily injury" or "property damage" takes place during the policy period; and
      (3) The "bodily injury" or "property damage" first manifests itself during the "policy period".

   c. Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

2. **Exclusions.**
   This insurance does not apply to:

   a. **Expected Or Intended Injury.**
      "Bodily injury" or "property damage" expected or intended from the standpoint of any insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

   b. **Contractual Liability.**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a written or oral contract or agreement. This exclusion does not apply to liability for damages:

(1) That the insured would have in the absence of the contract or agreement; or

(2) Assumed in a written contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

  (a) Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

  (b) Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

c. **Liquor Liability.**

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

(1) Causing or contributing to the intoxication of any person;

(2) The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

(3) Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

d. **Workers' Compensation And Similar Laws.**

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

e. **Employer's Liability.**

"Bodily injury" to:

(1) An "employee" of any insured "arising from" and in the course of:

  (a) Employment by any insured; or

  (b) Performing duties related to the conduct of the insured's business; or

(2) The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph (1) above.

This exclusion applies:

(1) Whether an insured may be liable as an employer or in any other capacity; and

(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

f. **Pollution.**

(1) "Bodily injury" or "property damage" "arising from" the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "hazardous substances" at any time;

(2) Any loss, cost or expense arising out of any:

  (a) Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "hazardous substances"; or

  (b) "Claims" or "suits" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of "hazardous substances".

g. **Aircraft, Auto Or Watercraft.**

"Bodily injury" or "property damage" "arising from" the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

h. **Mobile Equipment.**

"Bodily injury" or "property damage" "arising from":

(1) The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

(2) The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

i. **Nuclear Hazard.**

"Bodily injury" or "property damage":

(1) For which there is any other policy, insurance or coverage or with respect to

which an insured under this policy is also an insured under a Nuclear Energy Liability Policy issued by the Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its Limit of Liability.

(2) "Arising from" the hazardous properties of "nuclear material" and with respect to which:

   (a) Any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof; or

   (b) Any insured is, or had this policy not been issued by us would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

(3) "Arising from" the hazardous properties of any radioactive material, "nuclear material", "nuclear waste", or "spent fuel".

(4) "Arising from" hazardous properties of "nuclear material", if:

   (a) The "nuclear material" (i) is at any "nuclear facility" owned by, or operated by or on behalf of, any insured or (ii) has been discharged or dispensed therefrom;

   (b) The "nuclear material" is contained in "spend fuel" or "nuclear waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of any insured; or

   (c) The "bodily injury" or "property damage" arises out of the furnishing by any insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility".

(5) As used in this exclusion:

   (a) "hazardous properties" include radioactive, toxic or explosive properties;

   (b) "nuclear material" means "source material", "special nuclear material" or "by-product material";

   (c) "source material", "special nuclear material" and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

   (d) "spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor";

   (e) "nuclear waste" means any waste material (i) containing "nuclear material", radioactive material or "by-product material" and (ii) resulting from the operation by any person or organization of any "nuclear facility";

   (f) "nuclear facility" means:

     (i) Any "nuclear reactor";

     (ii) Any equipment or device designed or used for separating the isotopes of uranium or plutonium, processing or utilizing "spent fuel", or handling, processing or packaging "nuclear waste";

     (iii) Any equipment or device used for the processing, fabricating or alloying of "special nuclear material", if at any time the total amount of such material in the custody of the insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

     (iv) Any structure, basis, escalation, premises or place prepared or used for the storage or "disposal" of "nuclear waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

   (g) "nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

   (h) As used in this exclusion, "property damage" includes all forms of radioactive contamination of property.

j.  **War.**

"Bodily injury" or "property damage" due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution.

k.  **Damage To Property.**

"Property damage" to:

(1) Property owned, rented, or occupied by you;

(2) Premises sold, given away or abandoned by you, if the "property damage" arises out of any part of those premises;

(3) Property loaned to you;

(4) Personal property in the care, custody or control of the insured;

Copyright© 1999 American Safety Casualty Insurance Company

(5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

(6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraphs (1), (3) and (4) of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of 7 or fewer consecutive days.    A separate limit of insurance applies to Damage To Premises Rented To You as described in SECTION III - Limits Of Insurance.

Paragraph (2) of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs (3), (4), (5) and (6) of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph (6) of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

l.  **Damage To Your Product.**
    "Property damage" to "your product" "arising from" it or any part of it.

m.  **Damage To Your Work.**
    "Property damage" to "your work" "arising from" it or any part of it and included in the "products-completed operations hazard".
    This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

n.  **Damage To Impaired Property Or Property Not Physically Injured.**
    "Property damage" to "impaired property" or property that has not been physically injured, "arising from":
    (1) A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or
    (2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

    This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

o.  **Recall Of Products, Work Or Impaired Property.**
    Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal,    recall,    inspection,    repair, replacement, adjustment, removal or "disposal" of:
    (1) "Your product";
    (2) "Your work"; or
    (3) "Impaired property";
    if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

p.  **Personal And Advertising Injury.**
    "Bodily injury" "arising from" "personal and advertising injury".

q.  **Professional Services.**
    "Bodily injury" or "property damage" "arising from" the rendering of or failure to render any "professional services" by or for any insured.

r.  **Excluded Damages/Acts.**
    Damages "arising from":    (1) unlawful, unfair, willful, malicious, deceptive or fraudulent acts, or breach of any fiduciary duty; (2) criminal or civil fines, penalties or charges, or violation of any civil or penal statute or ordinance; (3) intentionally or grossly negligent tortious conduct, including "claims" for special, punitive or exemplary damages; (4) the development of, transfer or sale of real estate, or any defect in or impairment to title to real property, including fixtures; (5) officer or director dishonesty or liability; (6) breach of or failure to perform any contract or agreement; or (7) use of, infringement of, or interference with patents, trademarks, servicemarks, tradenames, copyright, software, trade secrets, intellectual property or any other similar rights.

s.  **Demolition Or Explosion Hazard.**
    "Bodily injury" or "property damage" "arising from" any "demolition hazard" or "explosion hazard".

t.  **Insured vs. Insured.**
    "Claims" or "suits" for damages by one insured against any other insured.

u.  **Employment-Related Practices.**
    "Bodily injury" to:
    (1) Any person "arising from" any:
        (a) Refusal to employ that person;

    Copyright© 1999 American Safety Casualty Insurance Company

(b) Termination of that person's employment;

(c) Refusal or failure to promote that person;

(d) Employment-related practices, policies, acts or omissions, including but not limited to coercion, promotion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

(e) Labor contract or agreement, or any employee benefit, or benefit plan or program, including but not limited to liability under the National Labor Relations Act, the Davis Bacon Act, the Employee Retirement Income Security Act of 1974, the Americans With Disabilities Act, or any workers' compensation or similar federal or state laws.

(2) The spouse, child, parent, brother or sister, or personal representative or administrator of that person as a consequence of the actions or inactions listed in paragraphs (a), (b), (c), (d) or (e) above.

This exclusion applies:

(1) Whether any insured may be liable as an employer or in any other capacity; and

(2) To any obligation of any insured to share damages with or repay someone else who must pay damages because of the offense, injury, "claim" or "suit".

v.   **Progressive Or Continuing Injury Or Damage.**
"Claims", "suits" or damages "arising from" any "occurrence" which first arose prior to the policy period, even if the results of the "occurrence" are continuing in nature or extend beyond the policy period during which the "occurrence" first arose, even if the results continue into this or any subsequent policy period.

w.   **Guaranties And Warranties.**
"Bodily injury" or "property damage" "arising from" any implied, express, oral or written guaranty or warranty.

Exclusions c. through n. do not apply to damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner. A separate limit of insurance applies to this coverage as described in SECTION III - Limits Of Insurance.

## COVERAGE B - PERSONAL AND ADVERTISING INJURY LIABILITY

1.   **Insuring Agreement.**

a.   We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any "claim" or "suit" that may result. But:

(1) The amount we will pay for damages is limited as described in SECTION III - Limits Of Insurance; and

(2) Our right and duty to defend end at such time when allegations potentially covered by the policy are either dropped or dismissed with prejudice, or when we have used up the applicable limit of insurance in the payment of judgments, in the payment of settlements, or in our offer to settle or the tender to the potential plaintiff of the applicable limit under COVERAGES A. or B., medical expenses under COVERAGE C., or any other "claim related costs". Once the applicable limit of insurance has been exhausted, we shall not be obligated to defend or continue to defend any "claim" or "suit" or pay any damages, "claim related costs" or supplementary payments. We have the right to seek reimbursement for any "claim related costs" we incur in connection with any "claim" or "suit" that we defend which is found by judicial determination or by mutual agreement of the parties to this policy to not be covered under the policy.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under SUPPLEMENTARY PAYMENTS - COVERAGES A and B.

b.   This insurance applies to "personal and advertising injury" caused by an offense "arising from" your business but only if the offense was committed in the "coverage territory" during the policy period.

2.   **Exclusions.**
This insurance does not apply to:

a.   "Personal and advertising injury":

(1) Caused by or at the direction of any insured or the representative of any insured with the knowledge of or reckless disregard for whether the act would violate the rights of another and would inflict "personal and advertising injury";

Copyright© 1999 American Safety Casualty Insurance Company

(2) "Arising from" oral or written publication of material, if done by or at the direction of any insured (or any insured's agent, representative, officer, director or employee) with knowledge of its falsity or with reckless disregard to its falsity;

(3) "Arising from" oral or written publication of material whose first publication took place before the beginning of the policy period;

(4) "Arising from" a criminal act committed by or at the direction of any insured;

(5) For which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement;

(6) "Arising from" a breach of contract, except an implied contract to use another's advertising idea in your "advertisement";

(7) "Arising from" the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement";

(8) "Arising from" the wrong description of the price of goods, products or services stated in your "advertisement";

(9) Committed by an insured whose business is advertising, broadcasting, publishing or telecasting. However, this exclusion does not apply to Paragraphs 23.a., b. and c. of "personal and advertising injury" under the Definitions Section;

(10)"Arising from" the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "hazardous substances" at any time;

(11)"Arising from" the rendering of or failure to render any "professional services" by or for any insured;

(12)"Arising from": (1) unlawful, unfair, deceptive or fraudulent acts, or breach of any fiduciary duty; (2) criminal or civil fines, penalties or charges, or violation of any civil or penal statute or ordinance; (3) intentionally or grossly negligent tortious conduct, including "claims" for special, punitive or exemplary damages; (4) the development of, transfer or sale of real estate, or any defect in or impairment to title to real property, including fixtures; (5) officer or director dishonesty or liability; (6) breach of or failure to perform any contract or agreement; or (7) infringement of patents, trademarks, tradenames, copyright, software or similar rights;

(13)"Arising from" any "demolition hazard" or "explosion hazard"; or

(14)"Arising from" the presence of or exposure to radioactive material, nuclear material, nuclear fuel or nuclear waste as defined by 40 CFR §§190-192.

b.(1) Any loss, cost or expense "arising from" any:
(a) Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "hazardous substances"; or

(b) "Claim" or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "hazardous substances".

(2) Any "claim" or "suit" by one insured against any other insured.

(3) "Personal and advertising injury" to:
(a) Any person "arising from" any:
(i) Refusal to employ that person;
(ii) Termination of that person's employment;
(iii) Refusal or failure to promote that person;
(iv) Employment-related practices, policies, acts or omissions, including but not limited to coercion, promotion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or
(v) Labor contract or agreement, or any employee benefit, or benefit plan or program, including but not limited to liability under the National Labor Relations Act, the Davis Bacon Act, the Employee Retirement Income Security Act of 1974, the Americans With Disabilities Act, or any workers' compensation or similar federal or state laws.
(b) The spouse, child, parent, brother or sister, or personal representative or administrator of that person as a consequence of the actions or inactions listed in paragraphs (i), (ii), (iii), (iv), or (v) above.

This exclusion applies:
(a) Whether the insured may be liable as an employer or in any other capacity; and
(b) To any obligation of the insured to share damages with or repay someone else who must pay damages because of the offense, injury, "claim" or "suit".

(4) Any "claim", "suit" or damages "arising from" any "occurrence" or offense which first arose prior to the policy period even if the results of the "occurrence" or offense are continuing in nature or extend beyond the policy period during which the "occurrence" first arose even if the results continue into this or any subsequent policy period.

(5) All exclusions contained in SECTION I, COVERAGE A., Par. 2., shall also apply to this coverage part. For the purposes of this exclusion, all references to "bodily injury" or "property damage" shall also apply to "personal and advertising injury".

## COVERAGE C - MEDICAL PAYMENTS

1. **Insuring Agreement.**
   a. We will pay reasonable and necessary medical expenses as described below for "bodily injury" caused by an accident:
      (1) On premises you own or rent;
      (2) On ways next to premises you own or rent; or
      (3) Because of your operations;

      provided that:
      (1) The accident takes place in the "coverage territory" and during the policy period;
      (2) The expenses are incurred and reported to us within one year of the date of the accident; and
      (3) The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.
   b. We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:
      (1) First aid administered at the time of an accident;
      (2) Necessary medical, surgical, x-ray and dental services, including prosthetic devices; and
      (3) Necessary ambulance, hospital, professional nursing and funeral services.

2. **Exclusions.**
   We will not pay expenses for "bodily injury":
   a. To any insured;
   b. To a person hired to do work for or on behalf of any insured or a tenant of any insured;
   c. To a person injured on that part of premises you own or rent that the person normally occupies;
   d. To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers'

compensation or disability benefits law or a similar law;
   e. To a person injured while taking part in athletics;
   f. Included within the "products-completed operations hazard";
   g. Excluded under Coverage A.; or
   h. Due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution.
   i. To a person "arising from" the operation of a "nuclear facility" by any person or organization. "Nuclear facility" has the meaning given it in SECTION I, COVERAGE A., Par. 2., Exclusion i.(5)(f).

## SUPPLEMENTARY PAYMENTS - COVERAGES A AND B

1. We will pay, with respect to any "claim" we investigate or settle, or any "suit" against an insured we defend:
   a. All expenses we incur;
   b. Up to $250 for cost of bail bonds required because of accidents or traffic law violations "arising from" the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds;
   c. The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds;
   d. All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the "claim" or "suit", including actual loss of earnings up to $250 a day because of time off from work;
   e. All costs taxed against the insured in the "suit";
   f. Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer; and
   g. All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will reduce the limits of insurance.

2. If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:
   a. The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

b. This insurance applies to such liability assumed by the insured;

c. The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

d. The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

e. The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

f. The indemnitee:

(1) Agrees in writing to:

(a) Cooperate with us in the investigation, settlement or defense of the "suit";

(b) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

(c) Notify any other insurer whose coverage is available to the indemnitee;

(d) Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee;

(e) Consent to the use of one attorney to defend the interests of any and all insureds; and

(f) Waive all claims for contribution, indemnity, subrogation or any other right to receive payment from each and every other insured under any policy issued by the Company or its parents, subsidiaries, affiliates or assigns; and

(2) Provides us with written authorization to:

(a) Obtain records and other information related to the "suit"; and

(b) Conduct and control the defense of the indemnitee in such "suit".

So long as the above conditions are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Such payments will be deemed to be damages for "bodily injury" and "property damage" and will reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses as Supplementary Payments ends when:

(1) We have used up the applicable limit of insurance in the payment of judgments or settlements; or

(2) The conditions set forth above, or the terms of the agreement described in Paragraph f. above, are no longer met.

**SECTION II - WHO IS AN INSURED**

1. If you are designated in the Declarations as:

a. An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner;

b. A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business;

c. A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers; or

d. An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

2. Each of the following is also an insured:

a. Your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" is an insured for:

(1) "Bodily injury" or "personal and advertising injury":

(a) To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), or to a co-"employee" while that co-"employee" is either in the course of his or her employment or performing duties related to the conduct of your business;

(b) To the spouse, child, parent, brother or sister of that co-"employee" as a consequence of Paragraph (1)(a) above;

(c) For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraphs (1)(a) or (b) above; or

 Copyright© 1999  American Safety Casualty Insurance Company

(d) Arising out of his or her providing or failing to provide professional health care services.

(2) "Property damage" to property:
  (a) Owned, occupied or used by;
  (b) Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by you, any of your "employees", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

b. Any person (other than your "employee"), or any organization while acting as your real estate manager;

c. Any person or organization having proper temporary custody of your property if you die, but only:
  (1) With respect to liability "arising from" the maintenance or use of that property; and
  (2) Until your legal representative has been appointed.

d. Your legal representative if you die, but only with respect to their duties as such.    That representative will have all your rights and duties under this Coverage Part.

3. With respect to "mobile equipment" registered in your name under any motor vehicle registration law, any person is an insured while driving such equipment along a public highway with your permission.    Any other person or organization responsible for the conduct of such person is also an insured, but only with respect to liability "arising from" the operation of the equipment, and only if no other insurance of any kind is available to that person or organization for this liability. However, no person or organization is an insured with respect to:

a. "Bodily injury" to a co-"employee" of the person driving the equipment; or

b. "Property damage" to property owned by, rented to, in the charge of or occupied by you or the employer of any person who is an insured under this provision.

4. Any organization you newly acquire, form, merge into or otherwise combine or affiliate with will be deemed to be an insured only if it is added by endorsement to the policy; in such event, COVERAGE A., COVERAGE B., COVERAGE C. and SUPPLEMENTARY PAYMENTS - COVERAGES A AND B do not apply to "bodily injury", "property damage", or "personal and advertising injury" that occurred or arose before the organization is added by endorsement.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture, organization or other entity that is not shown as a Named Insured in the Declarations or by endorsement to the policy.

## SECTION III - LIMITS OF INSURANCE

1. The Limits of Insurance shown in the Declarations and the rules below determine the most we will pay regardless of the number of:
   a. Insureds;
   b. "Occurrences";
   c. "Claims" made or "suits" brought;
   d. Persons or organizations making "claims" or bringing "suits"; or
   e. Certificates of insurance issued.

2. The General Aggregate Limit is the maximum amount we will pay for the sum of damages under COVERAGE A., except damages because of "bodily injury" or "property damage" included in the "products-completed operation hazard"; damages under COVERAGE B.; for SUPPLEMENTARY PAYMENTS - COVERAGES A AND B; for COVERAGE C. - MEDICAL PAYMENTS; and for all other "claim related costs".  Upon exhaustion of the General Aggregate Limit, we shall have no obligation to make any further payments to or on behalf of the insured for defense, indemnification or otherwise.

3. The Products - Completed Operations Aggregate Limit is the most we will pay for the sum of damages under:
   a. COVERAGE A.;
   b. for SUPPLEMENTARY PAYMENTS - COVERAGES A AND B; and
   c. for all other "claim related costs"
   "arising from" "bodily injury" or "property damage" included in the "products-completed operations hazard".

4. Subject to the General Aggregate Limit provided in 2. above, the Personal and Advertising Injury Limit is the most we will pay for the sum of damages under:
   a. COVERAGE B.;
   b. for SUPPLEMENTARY PAYMENTS - COVERAGES A AND B; and
   c. for all other "claim related costs"
   "arising from" "personal and advertising injury" caused by any one covered offense.

5. Subject to the General Aggregate Limit provided in 2. above, the Each Occurrence Limit is the maximum amount we will pay for the sum of damages under:
   a. COVERAGE A.;
   b. for SUPPLEMENTARY PAYMENTS - COVERAGES A AND B; and
   c. for all other "claim related costs"
   "arising from" "bodily injury" or "property damage" caused by a single covered "occurrence".

6. Subject to the General Aggregate Limit provided in 2. above, the Fire Damage Legal Limit is the most we will pay for the sum of damages under:

   a. COVERAGE A.; and

   b. for all other "claim related costs"

   because of "property damage" to premises rented to you "arising from" any one fire.

7. Subject to the General Aggregate Limit provided in 2. above, the Medical Expense Limit is the most we will pay under COVERAGE C. for all medical expenses because of "bodily injury" sustained by any one person.

## SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS

1. **Bankruptcy.**

   Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

2. **Duties In The Event Of An Occurrence, Offense, Claim Or Suit.**

   a. You must see to it that we are notified in writing within ten (10) days of any "supervisory employee" becoming aware of an "occurrence" or an offense which may result in a "claim". To the extent possible, notice should include:

      (1) How, when and where the "occurrence" or offense took place;

      (2) The names and addresses of any injured persons and witnesses; and

      (3) The nature and location of any injury or damage "arising from" the "occurrence" or offense.

   b. If a "claim" is made or "suit" is brought against any insured, you must:

      (1) Immediately record the specifics of the "claim" or "suit" and the date received; and

      (2) Notify us in writing within ten (10) days of your first receipt of the "claim" or "suit".

   c. You, any other involved insured and any "employee" of any insured must:

      (1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "claim" or "suit" within ten (10) days of your first receipt of the "claim" or "suit";

      (2) Authorize us to obtain records and other information;

      (3) Cooperate with us in the investigation or settlement of the "claim" or defense against the "suit";

      (4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply; and

      (5) Submit, upon request of the Company, to recorded statements and examinations under oath within thirty days of the request and sign his or her testimony.

   d. No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

3. **Legal Action Against Us.**

   No person or organization has a right under this Coverage Part:

   a. To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

   b. To sue us on this Coverage Part unless all of its terms have been fully complied with.

   A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured obtained after an actual trial; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

4. **Other Insurance.**

   If other valid and collectible insurance is available to the insured, our obligations are limited as follows:

   a. This insurance is primary, except when b. below applies.

   b. This insurance is excess over any other insurance that is valid and collectible insurance available to the insured or any Additional Insured whether such insurance is primary, excess, contingent or on any other basis and regardless of the nature, kind, date of issuance or limits of such other insurance available to the insured or any Additional Insured. We shall have no obligation to provide defense or indemnity for any "claim" or "suit" for which such other insurance exists until such time as the limits of such other insurance are exhausted by the payment of "claims" or "suits".

5. **Premium Audit.**

   a. We will compute all premiums for this Coverage Part in accordance with our rules and rates.

   b. Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period. Audit premiums are due and payable on notice to the first Named Insured. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

   c. The first Named Insured must keep records of the information we need for premium

computation, and send us copies at such times as we may request.

### 6. Representations.

By accepting this policy, you agree:

a. The statements in the Declarations, application for insurance, any other underwriting, loss control or claims related information, and any other information submitted to us was accurate and complete at the time you reported that information;

b. You shall notify us as soon as possible, but no later than 30 days, of your knowledge of any information indicating that the Declarations, application for insurance, any other underwriting or claims related information, or any other material information submitted to us was not accurate and complete at the time you provided that information or is no longer accurate or complete;

c. Those statements are based upon representations you made to us; and

d. We have issued this policy in reliance upon your representations.

### 7. Transfer Of Rights Of Recovery Against Others To Us.

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

### 8. When We Do Not Renew.

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date. If notice is mailed, proof of mailing will be sufficient proof of notice.

### 9. Inspection.

We shall have the right, but not the obligation, to inspect "your work", "your product", your property, documents and operations, wherever located, at any time and from time to time. The insured shall assure access by our representatives to all such areas and documents. Neither our right to make inspections nor the making thereof, nor the making of any report as a result thereof, shall constitute an undertaking, by us or our representatives, of or for the insured's or any other person's or entity's benefit, to determine, warrant or guarantee that such product, property or operations are safe, appropriate, or in compliance with any law, rule or regulation, or standard industry practice.

### 10. Liability Of The Company.

The insured agrees that our liability hereunder shall be satisfied solely from our available funds and that

our directors, officers, agents, managers, representatives, and shareholders shall have no liability hereunder to any insured.

### 11. Assignment.

The insured shall not assign, transfer or otherwise confer upon another person or entity, whether voluntarily or by operation of law, any right, obligation or interest in the policy without our express written consent.

### 12. Investigations.

It is expressly agreed by the insured that the undertaking, or agreement to undertake, by us, of any investigation, report, settlement or defense of any (1) "claim", notice, "suit", demand, complaint or similar matter; (2) "occurrence"; or (3) other fact or circumstance, shall not constitute either a waiver by us, or an estoppel on us to later assert any term, condition, provision or exclusion in the policy, or the applicability thereof to any such "claim", notice, "suit", demand, "occurrence" or complaint. It is agreed that any such action by us shall be undertaken with reservation of all rights.

### 13. Application For Insurance.

The application made to us for insurance, including all statements and representations contained therein, is incorporated herein and made a part of the policy.

### 14. Premium Computation.

Our rules and rates with respect to premium computation are incorporated herein and made a part of the policy.

### 15. Cancellation.

a. You may cancel this insurance by mailing or delivering to us advance written notice of cancellation.

b. We may cancel this insurance by mailing or delivering to you written notice of cancellation at least:

(1) 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

(2) 30 days before the effective date of cancellation if we cancel for any other reason.

c. We will mail or deliver our notice to your last mailing address known to us.

d. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

e. If this insurance is canceled, we will send you any premium refund (if any) due.

f. If notice is mailed, proof of mailing will be sufficient proof of notice.

16. **Choice of Law.**

This policy and all additions to, endorsements to, or modifications of the policy shall be interpreted under the laws of the State of Georgia.

17. **Consent to Jurisdiction.**

By accepting this policy or by presenting a "claim" which an insured contends is or may be covered under this policy, the Named Insured and any other insured submits themselves to the jurisdiction of the Superior Court of Cobb County, Georgia and agrees that such court shall have jurisdiction and venue for purposes determining all rights and obligations under this agreement. Any insured expressly consents to the jurisdiction and venue of the Superior Court of Cobb County, Georgia for any "suit" brought to interpret or enforce the provisions of this agreement. By contending that there is or may be coverage under this policy, each insured agrees to accept service of process by any legally recognized method available under Georgia law.

18. **Allocation and Reimbursement.**

In the event a "suit" is filed against any insured and we raise a question as to whether or not there is coverage for all of the allegations of the "suit":

a. The cost and expense of any investigation, defense, settlement, judgment or other expense associated with such "suit" shall be allocated as follows:

(1) If "suit" is divided into separate counts, allocation to an insured shall be based upon the following fraction:

Number of counts of "suit" that are covered
—————————————————————————
Total number of counts of "suit"

The Reservation of Rights or Nonwaiver Agreement issued by us shall determine the counts that are or may not be covered.

(2) If the "suit" is not divided into separate counts, any insured shall pay one half.

b. Any insured who does not pay all sums in paragraph a. within thirty (30) days of mailing to the last known address of that insured shall have withdrawn any demand that we undertake any obligation under this policy and shall have waived any and all rights under this policy.

c. Every insured shall reimburse us with regard to any cost or expense of investigation, defense, settlement, judgment, or any other expense incurred by us with regard to those portions of any "claim" or "suit" that are or may not be covered.

**SECTION V - DEFINITIONS**

1. "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters.

2. "Arising from" means arising out of, relating to or resulting from.

3. "Asbestos" means naturally occurring hydrated fibrous mineral silicates that possess a unique crystalline structure and are incombustible in air, including chrysotile, amosite, crocidolite, tremolite, anthophyllite, actinolite, and any material which contains "asbestos".

4. "Auto" means a land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment. But "auto" does not include "mobile equipment".

5. "Bodily injury" means "bodily injury", sickness or disease sustained by a person, including death resulting from any of these at any time.

6. "Claim" means any written demand, notice, request for defense, request for indemnity, or other legal or equitable proceeding against the insured by a person, entity or asserted class for damages because of "bodily injury", "property damage", or "personal injury and advertising injury".

7. "Claim related costs" means all costs and expenses associated with the handling, defense, settlement or appeal of any "claim" or "suit", including but not limited to amounts for damages, medical expenses, attorneys' fees, court costs, arbitration or mediation costs or expenses, expert witness fees, investigative fees, adjustment fees, SUPPLEMENTARY PAYMENTS and any other "claim" or "suit" related costs or expenses.

8. "Coverage territory" means:

a. The United States of America (including its territories and possessions), Puerto Rico and Canada;

b. International waters or airspace, provided the injury or damage does not occur in the course of travel or transportation to or from any place not included in a. above; or

c. All parts of the world if:

(1) The injury or damage arises out of:

(a) Goods or products made or sold by you in the territory described in a. above; or

(b) The activities of a person whose home is in the territory described in a. above, but is away for a short time on your business; and

(2) The insured's responsibility to pay damages is determined in a "suit" on the merits, in the

territory described in a. above or in a settlement we agree to.

9. "Demolition hazard" means:

a. The collapse of or structural injury to any building or structure "arising from" the wrecking or taking out of any load-supporting structural member.

b. The "demolition hazard" does not include the wrecking or taking out of any load-supporting structural member when such activities are performed by a contractor or subcontractor working for you or on your behalf, provided such contractor or subcontractor carries valid and collectible general liability insurance covering such operations naming you as an Additional Insured, with an insurance carrier that is authorized in the state where such activities are performed.

c. The "demolition hazard" also does not include the renovation of a building or modifying of any non-structural member that is not load supporting.

10. "Disposal" means all activities associated with the deposit or burial of "hazardous substances" or other materials.

11. "Employee" means a person hired or engaged to perform duties related to the conduct of your business, including but not limited to a "leased worker" or a "temporary worker".

12. "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

13. "Explosion hazard" means blasting or explosion. The "explosion hazard" does not include the explosion of air or steam vessels, piping under pressure, machinery or power transmitting equipment.

14. "Hazardous substances" means any solid, liquid, gaseous or thermal irritant or contaminant, including, but not limited to acids, alkalis, animal/bird droppings, "asbestos", chemicals, fumes, "lead", "medical waste", mold/mildew/fungus, "radon", "refractory ceramic fibers", silica, fiberglass, smoke, soot, vapor, waste or other dangerous, hazardous or toxic substances as listed by any state or federal agency or department, and the by-product of any chemical, mechanical or thermal process or reaction. Waste includes any regulated waste, materials to be recycled, reconditioned or reclaimed.

15. "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

a. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

b. You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by:

a. The repair, replacement, adjustment or removal of "your product" or "your work"; or

b. Your fulfilling the terms of the contract or agreement.

16. "Insured contract" means:

a. That part of any written contract or written agreement under which you assume the tort liability of another party to pay damages not otherwise excluded under the policy because of "bodily injury" or "property damage" to a third person or organization and caused by your negligence. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

b. An "insured contract" does not include that part of any contract or agreement:

(1) That indemnifies another party for "claims" or "suits" "arising from" the performance of "your work" within 50 feet of any railroad or subway property;

(2) Under which any insured assumes liability for "claims" or "suits" "arising from" the rendering of or failing to render "professional services";

(3) Under which any insured agrees to indemnify, hold harmless, defend, make contribution to or share damages with another party for "claims" or "suits" directly or indirectly "arising from" the indemnified party's negligence, actions, inactions or status, including (without limitation) for vicarious liability, derivative liability, strict liability or liability without fault except for the actions or inactions of the Named Insured; or

(4) That indemnifies or agrees to make contribution to, or share damages with, another party for damage by fire to premises rented or loaned to or occupied by the insured.

17. "Lead" means the heavy, ductile, soft, solid, naturally occurring metallic element used in paints, pipes, solder, pottery, and batteries, and any substances containing "lead".

18. "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

19. "Loading or unloading" means the handling of property:
   a. After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";
   b. While it is in or on an aircraft, watercraft or "auto"; or
   c. While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

   but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

20. "Medical waste" means any substance that could harbor or transmit pathogenic organisms, including, but not limited to body tissues, organs, body parts, body fluids, blood, excreta, secretions, bandages and hypodermic needles.

21. "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:
   a. Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;
   b. Vehicles maintained for use solely on or next to premises you own or rent;
   c. Vehicles that travel on crawler treads;
   d. Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:
      (1) Power cranes, shovels, loaders, diggers or drills; or
      (2) Road construction or resurfacing equipment such as graders, scrapers or rollers;
   e. Vehicles not described in a., b., c. or d. above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:
      (1) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or
      (2) Cherry pickers and similar devices used to raise or lower workers;
   f. Vehicles not described in a., b., c. or d. above maintained primarily for purposes other than the transportation of persons or cargo.

   However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":
   a. Equipment designed primarily for:
      (1) Snow removal;
      (2) Road maintenance, but not construction or resurfacing; or
      (3) Street cleaning;

   b. Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and
   c. Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

22. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

23. "Personal and advertising injury" means injury, including consequential "bodily injury", "arising from" one or more of the following offenses:
   a. False arrest, detention or imprisonment;
   b. Malicious prosecution;
   c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;
   d. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;
   e. Oral or written publication of material that violates a person's right of privacy;
   f. The use of another's advertising idea in your "advertisement"; or
   g. Infringing upon another's copyright, trade dress or slogan in your "advertisement".

24. "Products-completed operations hazard":
   a. Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and "arising from" "your product" or "your work" except:
      (1) Products that are still in your physical possession; or
      (2) Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:
         (a) When all of the work called for in your contract has been completed.
         (b) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.
         (c) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

      Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

Copyright© 1999  American Safety Casualty Insurance Company

b. Does not include "bodily injury" or "property damage" arising out of:
   (1) The transportation of property, unless the injury or damage "arising from" a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;
   (2) The existence of tools, uninstalled equipment or abandoned or unused materials; or
   (3) Products or operations for which the classification, listed in the Declarations or in a policy schedule, states that products-completed operations are subject to the General Aggregate Limit.

25. "Professional services" means:
   a. The preparing, approving, recommending or failing to prepare, approve or recommend maps, drawings, opinions, reports, surveys, change orders, designs, specifications, hazard assessment plans, response actions, abatement methods or products, air monitoring plans or insurance requirements;
   b. Supervisory, inspection, training or engineering services; or
   c. Commercial or industrial hygiene, air monitoring, testing, laboratory analysis, public health, legal, accounting, architectural, medical, nursing, data processing, consulting or investment advisory services.

26. "Property damage" means:
   a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
   b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

27. "Radon" means a colorless, odorless, tasteless gas produced from the radioactive decay of radium.

28. "Refractory-ceramic fibers" means continuous or non-continuous filaments made from ceramic material having those chemical and physical properties that allow them to be exposed to environments in excess of 1000°F (538°C).

29. "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

a. An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or
b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

30. "Supervisory employee" means any "executive officer", project foreman, site supervisor, project manager, or any officer, director, manager or supervisor who is or who has at any time been employed by or working on behalf of any insured.

31. "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

32. "Your product" means:
   a. Any goods or products, other than real property, manufactured, specified, recommended, sold, handled, distributed or disposed of by:
      (1) You;
      (2) Others trading under your name; or
      (3) A person or organization whose business or assets you have acquired; and
   b. Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

   "Your product" includes:
   a. Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and
   b. The providing of or failure to provide warnings or instructions.

   "Your product" does not include vending machines or other property rented to or located for the use of others but not sold.

33. "Your work" means:
   a. Work or operations performed by you or on your behalf; and
   b. Materials, parts or equipment furnished in connection with such work or operations.

   "Your work" includes:
   a. Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and
   b. The providing of or failure to provide warnings or instructions.

 Copyright© 1999 American Safety Casualty Insurance Company

COMMERCIAL GENERAL LIABILITY
CG 26 24 08 92

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# NEW YORK CHANGES – LEGAL ACTION AGAINST US

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART

The LEGAL ACTION AGAINST US Condition (Section **IV**) is replaced by the following:

**LEGAL ACTION AGAINST US**

No person or organization has a right under this Coverage Part:

**a.** To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

**b.** To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**ASCIC 98 01 11 99**

## SELF-INSURED RETENTION

This Endorsement shall not serve to increase our limits of insurance, as described in SECTION III - LIMITS OF INSURANCE.

### SCHEDULE

| Amount and Basis of Self-Insured Retention | |
|---|---|
| $25,000 | per claim Contractors Pollution Liability / Microbiological Decontamination Limited Coverage |
| $50,000 | per occurrence General Liability arising from bodily injury to an employee |
| $25,000 | per occurrence General Liability all other |

**Application of Endorsement:** (Enter below any limitations on the application of this endorsement. If no limitation is entered, the self-insured retention applies to all damages, however caused):

| NO LIMITATIONS |
|---|

1. Our obligation under the policy to pay damages or "claim related costs" to you or on your behalf applies only to the amount of damages or "claim related costs" in excess of any self-insured retention amounts stated in the Schedule above as applicable to such coverages, and the limits of insurance applicable to such coverages will not be reduced by the amount of such self-insured retention. The self-insured retention amount shall apply to all Coverage Parts existing in or attaching to the policy, unless otherwise indicated separately in a Coverage Part or Endorsement attaching to the policy.

As a condition precedent to our obligations to provide or continue to provide indemnity, coverage or defense hereunder, the insured, upon receipt of notice of any "claim", "suit" or incident that may give rise to a "claim" or "suit", and at our request, shall pay over and deposit with us all or any part of the self-insured retention amount as specified in the policy, requested by us, to be applied by us as payment toward any damages or "claim related costs" incurred in the handling or settlement of any such "claim" or "suit".

2. The self-insured retention amounts stated in the Schedule apply as follows:

   A. **Per Claim Basis** - if the self-insured retention is on a "per claim" basis, the self-insured retention amount applies separately to all damages and "claim related costs" because of "bodily injury", "property damage" or "personal and advertising injury" sustained by any one person or organization as the result of any one "occurrence" or offense.

   B. **Per Occurrence Basis** - if the self-insured retention is on a "per occurrence" basis, the self-insured retention amount applies to all damages and "claim related costs" because of "bodily injury", "property damage" or "personal and advertising injury" as the result of any one "occurrence" regardless of the number of persons or organizations who sustain damages because of that "occurrence" or offense.

All other terms, conditions and exclusions under the policy are applicable to this Endorsement and remain unchanged.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY**

## ASCIC 98 03 12 99

## DATE RECOGNITION EXCLUSION ENDORSEMENT

This Endorsement shall not serve to increase our limits of insurance, as described in SECTION III - LIMITS OF INSURANCE.

The following exclusion shall be added to and apply to all SECTIONS and coverage parts of the policy.

This insurance does not apply to any "claim", "suit" "loss" or "pollution incident" "arising from", whether directly or indirectly, any of the following:

1. Any actual or alleged failure, modification to, malfunction or inadequacy of:
   a. any of the following, whether belonging to any insured or to others or whether recommended, sold, procured, designed or developed by any insured or others:
      (1) computer hardware, including micro-processors;
      (2) computer application software;
      (3) computer operating systems and related software;
      (4) computer networks;
      (5) micro-processors, semi-conductors, or digital, analog or integrated devices not part of any computer systems; or
      (6) any other computerized or electronic equipment or components; or
   b. any other products, and any services, data or functions that directly or indirectly use or rely

upon, in any manner, any of the items listed in Paragraph 1.a. of this Endorsement.

due to the inability to correctly recognize, process, distinguish, interpret or accept any date, including, but not limited to the change to the year 2000 and beyond, or the leap year in the year 2000 or beyond.

2. Any advice, consultation, design, evaluation, inspection, installation, maintenance, repair, replacement or supervision provided or done by you or for you to determine, rectify or test for, any potential or actual problems described in paragraph 1. of this Endorsement.

This exclusion applies regardless of any other cause, event or incident that contributes concurrently or in any sequence to the "claim", "suit" "loss" or "pollution incident". This exclusion also applies regardless of any changes or modifications made at any time to any of the items listed in Paragraph 1.a. to correct or attempt to correct the inability to recognize, process, distinguish, interpret or accept any date.

All other terms, conditions and exclusions under the policy are applicable to this Endorsement and remain unchanged.

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### ASCIC 98 04 11 99

### ENDORSEMENT -- SERVICE OF SUIT CLAUSE

This Endorsement shall not serve to increase our limits of insurance, as described in SECTION III - LIMITS OF INSURANCE.

It is agreed that the service of process in any "claim" or "suit" on the policy against American Safety Casualty Insurance Company may be made upon the highest one in authority bearing the title "Commissioner", "Director" or "Superintendent" of Insurance of the state or commonwealth wherein the policy is issued. The one in authority bearing the title "Commissioner", "Director" or "Superintendent" of Insurance of the state or commonwealth wherein the policy is issued is hereby authorized and directed to accept service of process on our behalf in any such "claim" or "suit", provided such "Commissioner", "Director" or "Superintendent" has a procedure for forwarding "claims" and "suits" to insurance companies by registered or certified mail and agrees to abide by such procedure by mailing via registered or certified mail all documents so served to American Safety Casualty Insurance Company at 1845 The Exchange, Suite 200, Atlanta, Georgia 30339. It is further agreed that the insured shall, by registered or certified mail, send to American Safety Casualty Insurance Company, a copy of all documents relating to the service of process in the "claim" or "suit" as the insured has delivered to the highest one in authority of the Insurance Department of the state or commonwealth wherein the policy is issued.

All other terms, conditions and exclusions under the policy are applicable to this Endorsement and remain unchanged.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**ASCIC 98 05 11 99**

**ADDITIONAL NAMED INSURED ENDORSEMENT**

This Endorsement shall not serve to increase our limits of insurance, as described in SECTION III - LIMITS OF INSURANCE.

In consideration of the payment of premiums, it is hereby understood and agreed that the following are Additional Named Insureds under the policy (collectively referred to as the "Additional Named Insureds") and shall be treated under the policy as Named Insureds for coverage purposes, subject to all terms, conditions, limits and exclusions provided in the policy and only as respects operations/services covered by the policy which are performed on or after the effective date designated below.

| Effective Date | Additional Named Insured(s) | Address(es) |
|---|---|---|
| 12/01/2004 | Pierpont Environmental | 1379 Commerce Avenue, Bronx, NY 10461 |
| 12/01/2004 | Dynamic Equipment Corporation | 1379 Commerce Avenue, Bronx, NY 10461 |
| 12/01/2004 | 1379 Realty Corporation | 1379 Commerce Avenue, Bronx, NY 10461 |
|  |  |  |
|  |  |  |
|  |  |  |

All other terms, conditions and exclusions under the policy are applicable to this Endorsement and remain unchanged.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY**

**ASIC 98 06 11 99**

## ADDITIONAL INSURED COVERAGE ENDORSEMENT

This Endorsement shall not serve to increase our limits of insurance, as described in SECTION III - LIMITS OF INSURANCE.

In consideration of the payment of premiums, it is hereby agreed that the following provisions are added to the policy.

A. The following shall be added to SECTION I, COVERAGE A., Par. 1. as subparagraphs d. and e. of the policy:

d. Any person shown as an Additional Insured on a certificate of insurance issued by us or our authorized representative, or by endorsement to the policy, provided such person is required to be named as an Additional Insured in a written contract with you, shall be entitled to coverage hereunder solely for "claims" or "suits" for "bodily injury" or "property damage" arising solely out of your negligence. The limits of insurance provided to such Additional Insured shall be limited to the lesser of the limits of insurance required in a written contract with you, or the limits of insurance as described in SECTION III - LIMITS OF INSURANCE under

the policy. No obligation for defense or indemnity under the policy is provided to any Additional Insured for "claims" or "suits" directly or indirectly "arising from" the status, actions or inaction, including (without limitation) for vicarious, derivative or strict liability of said Additional Insured, its agents, consultants, servants, contractors or subcontractors (other than the Named Insured), except for the actions or inactions of the Named Insured.

e. We will have no duty to defend any insured, other than the Named Insured, except when the sole allegation against that insured is vicarious liability for the sole negligence of the Named Insured.

All terms, conditions and exclusions of the policy, including, but not limited to, any deductible or self-insured retention, shall apply to such Additional Insured.

All other terms, conditions and exclusions under the policy are applicable to this Endorsement and remain unchanged.

Copyright© 1999 American Safety Casualty Insurance Company

# THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## ASCIC 98 11 11 99

## ENDORSEMENT-- EXPANDED WAIVER OF SUBROGATION

This Endorsement shall not serve to increase our limits of insurance, as described in SECTION III - LIMITS OF INSURANCE.

In consideration of the payment of premiums, we waive our rights to subrogation (excluding indemnity or contribution), against a project owner or general contractor in connection with the performance of "your work" at a specific Project, provided that we are required to waive our rights to subrogation against such project owner or general contractor in a written contract for "your work" that you enter into with such project owner or general contractor, and subject to the following conditions and exclusions.

Subrogation shall not be waived with respect to any liability arising directly or indirectly out of any of the following actions of such project owner or general contractor:

1. "Professional services" on or in connection with the Project;

2. Modifying or changing the Project specifications without the express written consent of the insured; and

3. Any activities beyond the scope of monitoring the progress of the insured on the Project.

This waiver of subrogation shall not, directly or indirectly, apply to a waiver of any rights of indemnity or contribution.

All other terms, conditions and exclusions under the policy are applicable to this Endorsement and remain unchanged.

# THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## ASCIC 98 13 11 99

### INCREASED LIMITS FOR SPECIFIED PROJECTS

Except as specifically provided herein, this Endorsement shall not serve to increase our limits of insurance, as described in SECTION III - LIMITS OF INSURANCE.

In consideration of the payment of premiums, and any additional premium that may be required by us for increasing the limits of the policy for a specific project, site or location, it is hereby agreed and understood that, solely in the event a certificate of insurance is issued by us for the performance of "your work" at a specific project, site or location, which, at your request, displays limits of insurance greater than those described in the Declarations of the policy, the limits shown on the certificate of insurance issued by us shall apply solely with respect to "your work" at such specified project, site or location, but shall not serve to increase the limits of insurance at any other project, site or location. All payments made by us, whether for damages, "claim related costs" or otherwise, in connection with any "claim" or "suit" brought under the policy shall reduce the limits of insurance provided in this Endorsement, on the certificate, and in SECTION III - LIMITS OF INSURANCE of the policy. All payments made by us, whether for damages, "claim related costs" or otherwise under this Endorsement shall likewise reduce the limits of insurance provided under the policy.

All other terms, conditions and exclusions under the policy are app to this Endorsement and remain unchanged.

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### ASCIC 98 28 11 99

### NEW YORK AMENDATORY ENDORSEMENT

This Endorsement shall not serve to increase our limits of insurance, as described in SECTION III - LIMITS OF INSURANCE.

In consideration of the payment of premiums, it is hereby agreed that the following changes are incorporated into the policy.

A. SECTION IV, Par. 2., Subparagraph b. is hereby amended to add, following the last sentence, the following:

Provided, however, that the failure by the insured to give written notice to us of an "occurrence", offense, "claim" or "suit" in a timely fashion shall not invalidate any "claim" made by the insured or by any other claimant if it shall be shown that it was not reasonably possible for the insured to give such notice in a timely fashion, and provided that such written notice was provided to us as soon as it was reasonably possible.

B. SECTION IV, Par. 2. is hereby amended to add Subparagraph e. as follows:

e. Written notice of a "claim" or "suit" by or on behalf of the insured, or written notice of a "claim" or "suit" by or on behalf of the injured person or any other claimant, to our New York State agent, which is specifically appointed as such by us, shall be considered as notice to us, provided that such written notice contains, at a minimum, sufficient information to allow us to identify:

(1) the insured; and
(2) the claimant; and
(3) how, when, and where the "occurrence" took place; and
(4) the names and addresses of any injured persons and witnesses; and
(5) the nature and location of any injury or damage arising out of the "occurrence" or offense.

Such written notice by or on behalf of any insured, injured person or claimant must be received by our New York State agent as soon as practicable.

All other terms, conditions and exclusions are applicable to this Endorsement and remain unchanged.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## ASCIC 98 34 11 99

## ASBESTOS ABATEMENT LIABILITY COVERAGE ENDORSEMENT
### (Expanded Completed Operations)

This Endorsement shall not serve to increase our limits of insurance, as described in SECTION III - LIMITS OF INSURANCE.

In consideration of the payment of premiums, it is hereby agreed that the following changes are incorporated into the policy.

A. The following shall be added to SECTION I, COVERAGE A., Par. 1. of the policy:

1. Notwithstanding the terms of SECTION I, COVERAGE A., Par. 2., Exclusion f.(1) of the policy, but subject to all other terms, conditions and exclusions of the policy, we will pay those sums the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" caused by "asbestos", which results from an "occurrence" "arising from" "asbestos abatement" activities performed by you during the Coverage period shown below. Solely with respect to this coverage provision A.1. under this Endorsement, SECTION I, COVERAGE A., Par. 1., Subparagraph b.(2) shall not apply.

   The Coverage Period applicable to A.1. above shall be 12/01/2003 to 12/01/2005.

2. Notwithstanding the terms of SECTION I, COVERAGE A., Par. 2., Exclusion f.(1) of the policy, but subject to all other terms, conditions and exclusions of the policy, we will pay those sums the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage", caused by "asbestos", which takes place during the policy period and which is caused by an "occurrence" "arising from" your "encapsulation" or "enclosure" of "asbestos" during the policy period.

3. Notwithstanding the terms of SECTION I, COVERAGE A., Par. 2., Exclusion n.(1) of the policy, but subject to all other terms, conditions and exclusions in the policy, this insurance shall apply to "property damage" to "impaired property" caused by the release, dispersal, discharge or escape of "asbestos" resulting from your performance of "asbestos abatement" during the policy period.

B. The following exclusion shall be added to SECTION I, COVERAGE A. and COVERAGE B., Par. 2. of the policy.

   This insurance does not apply to:

   "Claims" or "suits" "arising from" the manufacture, distribution, sale, installation or utilization of any product containing or consisting of "asbestos" in whatever form.

C. For the purposes of the coverage provided under this Endorsement, the following definitions are added to SECTION V of the policy:

1. "Asbestos abatement" means all procedures and operations to prevent fiber release from "asbestos" containing or "asbestos" contaminated materials, and excludes "encapsulation" and "enclosure".

2. "Encapsulant" means a substance applied directly to the surface of a material or substance to prevent the discharge, dispersal, release or escape of any part of that material or substance, either by creating a membrane over the surface or by penetrating the material or substance and binding its components together.

3. "Encapsulation" means the coating of the surface of a material or substance with an "encapsulant" (excluding lockdown), to prevent the discharge, dispersal, release or escape of any part of that material or substance.

4. "Enclosure" means those procedures and operations (excluding "encapsulation") required to construct an airtight, impermeable wall, ceiling or other permanent barrier around the surface of a material or substance to prevent the discharge, dispersal, release or escape of any part of that material or substance.

D. Solely with respect to the coverage afforded under this Endorsement, the definition of "bodily injury" as described in SECTION V of the policy shall be

Copyright© 1999  American Safety Casualty Insurance Company

amended to include the ingestion or inhalation of "asbestos".

All other terms, conditions and exclusions under the policy are applicable to this Endorsement and remain unchanged.

 Copyright© 1999  American Safety Casualty Insurance Company

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**ASCIC 98 39 11 99**

**LEAD ABATEMENT LIABILITY COVERAGE ENDORSEMENT**

This Endorsement shall not serve to increase our limits of insurance, as described in SECTION III - LIMITS OF INSURANCE.

In consideration of the payment of premiums, it is hereby agreed that the following changes are incorporated into the policy.

A. The following shall be added to SECTION I, COVERAGE A., Par. 1. of the policy:

Notwithstanding the terms of SECTION I, COVERAGE A., Par. 2., Exclusion f.(1) of the policy, but subject to all other terms, conditions and exclusions of the policy, we will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" caused by "lead", which takes place during the policy period and which is caused by an "occurrence" resulting from your "lead abatement" activities performed during the policy period.

B. The following exclusions shall be added to SECTION I, COVERAGE A. and COVERAGE B., Par. 2. of the policy.

This insurance does not apply to:

1. "Claims" or "suits" "arising from" the "encapsulation" or "enclosure" of "lead".
2. "Claims" or "suits" "arising from" the removal or treatment of "lead" contained in any petroleum-based product, including, but not limited to gasoline.
3. "Claims" or "suits" "arising from" dry scraping, sanding, sandblasting or open flame burning of "lead" or "lead" containing material, or the use of methylene chloride or methylene chloride based products.

4. "Claims" or "suits" "arising from" the manufacture, distribution, sale, installation or utilization of any product containing or consisting of "lead" in whatever form.

C. For the purposes of the coverage provided under this Endorsement, the following definitions are added to SECTION V of the policy:

1. "Encapsulant" means a substance applied directly to the surface of a material or substance to prevent the discharge, dispersal, release or escape of any part of that material or substance, either by creating a membrane over the surface or by penetrating the material or substance and binding its components together.

2. "Encapsulation" means the coating of the surface of a material or substance with an "encapsulant" (excluding lockdown), to prevent the discharge, dispersal, release or escape of any part of that material or substance.

3. "Enclosure" means those procedures and operations (excluding "encapsulation") required to construct an airtight, impermeable wall, ceiling or other permanent barrier around the surface of a material or substance to prevent the discharge, dispersal, release or escape of any part of that material or substance.

4. "Lead abatement" means all procedures and operations required to clean up, detoxify, dilute, remove or abate "lead" or "lead" containing materials.

All other terms, conditions and exclusions under the policy are applicable to this Endorsement and remain unchanged.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## ASCIC 98 40 10 99

## CONTRACTOR'S POLLUTION LIABILITY COVERAGE ENDORSEMENT

### CLAIM RELATED COSTS AND SUPPLEMENTARY PAYMENTS REDUCE THE LIMITS OF INSURANCE

This Endorsement shall not serve to increase our limits of insurance, as described in SECTION III - LIMITS OF INSURANCE.

In consideration of the payment of premiums, it is hereby agreed that the following changes are incorporated into the policy.

A. The following shall be added to SECTION I, COVERAGE A., Par. 1. of the policy:

Notwithstanding the terms of SECTION I, COVERAGE A., Par. 2., Exclusion f.(1) of the policy, but subject to all other terms, conditions and exclusions of the policy, we will pay those sums in excess of the self-insured retention that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" that takes place during the policy period because of a "pollution incident" caused by the performance of "covered contracting operations" during the policy period in the "coverage territory". The "bodily injury" or "property damage" must first manifest itself during the policy period.

B. The following exclusions are added to SECTION I, COVERAGE A., Par. 2. of the policy.

This insurance does not apply to any "claim" or "suit":

1. "Arising from": (1) any storage, "disposal" or landfilling of any hazardous or nonhazardous substances or material or "arising from" any site, facility or "landfill" that is not a "project site"; or (2) any "pollution incident" on, at, under or emanating from any location to which you or others working directly or indirectly on your behalf arranges for, sends or ever have sent materials for treatment, recycling, reclamation, storage or "disposal" unless specifically endorsed onto this policy.

2. Based upon or arising out of a "pollution incident" existing, commencing or occurring prior to the policy effective date stated in the Declarations.

3. Claimed by any of the following:
   (a) any related business enterprise which is operated, managed or owned, in whole or in part, by the insured, or
   (b) a parent company of the insured, or
   (c) any affiliated or subsidiary company of the insured.

4. "Arising from" any discharge, dispersal, release, seepage, migration, inhalation or escape of "pollutants" on, at, under or emanating from any property, location, structure or site you currently or have ever owned, operated or rented.

5. "Arising from" any goods, products or equipment manufactured, sold, handled, distributed, installed or disposed of by you, your subsidiaries, any entity which wholly or partly owns, operates or manages you or any subsidiary of such entity, others under license by you, your vendors or subcontractors or any other person or organization working directly or indirectly on your behalf.

6. "Arising from" any insured's involvement as a partner, officer, director, stockholder, employer or employee of any business enterprise not named in the Declarations, or "arising from" any insured's involvement in "covered contracting operations" rendered to or on behalf of, any business enterprise not named in the Declarations that wholly or partly owns the insured or which to any extent controls, operates, or manages the insured, or that is wholly or partly owned by an insured, or in which an insured is an officer, partner, director or employee, or which is to any extent controlled, operated, or managed by an insured.

C. The following definitions are added to SECTION V of the policy:

"Clean-up costs" means expenses incurred in the removal, detoxification, dilution, neutralization, or remediation of "pollutants" in contaminated soil (including any building or structure thereupon), surfacewater or groundwater, arising directly out of a "pollution incident" provided such expenses:

Copyright© 1999 American Safety Casualty Insurance Company

a. Are specifically mandated by a governmental entity duly acting under the authority of environmental law(s); or

b. Have been actually incurred by a governmental entity or third party.

"Covered contracting operations" means those specifically described physical operations as listed in the endorsement attached to this policy entitled "COVERED CONTRACTING OPERATIONS ENDORSEMENT" which are performed directly by you or on your behalf for others at a "project site".

"Disposal" means all activities associated with the deposit of "pollutants" or other materials at a regulated or unregulated disposal site, including but not limited to any "landfill".

"Landfill" means a regulated or unregulated "disposal site" used for the "disposal" of solid or liquid wastes on or beneath the land.

"Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including but not limited to smoke, vapor, soot, fumes, acids, alkalis, toxic chemicals and waste materials.

"Pollution incident" means the actual discharge, dispersal, release or escape of "pollutants" into or upon land, the atmosphere or any watercourse or body of water, provided such conditions are not naturally present in the environment.

"Project site" means the immediate area of a building, structure or property within which "covered contracting operations" are performed.

D. Solely with respect to the coverage provided under this Endorsement, the definition of "bodily injury" contained in SECTION V, Par. 3. of the policy is deleted in its entirety and the following language is inserted in lieu thereof.

   3. "Bodily injury" means physical injury, sickness or disease sustained by a person, including death resulting from any of these, arising directly out of a "pollution incident". "Bodily injury" includes mental anguish or emotional distress, but only if resulting directly from physical injury, sickness or disease sustained by the same person.

E. Solely with respect to the coverage afforded under this Endorsement, the definition of "property damage" shall be amended to include "clean-up costs".

F. The following Conditions are added under SECTION IV:

   **Reports**. A condition precedent to coverage under the policy shall be for the insured to notify us in writing of any "pollution incident" as soon as possible, and in any event, not later than ten (10) days after any "supervisory employee" becomes aware of any such event.

All other terms, conditions and exclusions under the policy are applicable to this Endorsement and remain unchanged.

Copyright© 1999 American Safety Casualty Insurance Company

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**ASCIC 98 44 12 99**

**COVERED CONTRACTING OPERATIONS ENDORSEMENT**

This Endorsement shall not serve to increase our limits of insurance, as described in SECTION III - LIMITS OF INSURANCE.

In consideration of the payment of premiums, it is hereby agreed that the following changes are incorporated into the policy.

A. "Covered contracting operations" shall mean the following specific activities, procedures or operations:

| |
|---|
| Storage Tank Cleaning |
| Demolition Non-Structural (Interior Remodel) |
| Demolition – Over Two Stories |
| Emergency Response |
| PCB – Light Ballast Removal |

All other terms, conditions and exclusions under the policy are applicable to this Endorsement and remain unchanged.

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

**ASCIC - 98 66 08 02**

## MOLD, MILDEW, FUNGUS EXCLUSION ENDORSEMENT

This Endorsement shall not serve to increase our limits of insurance, as described in the **LIMITS OF INSURANCE** section of the policy.

The following exclusion shall be added to and apply to all SECTIONS and coverage parts of the policy.

A. This insurance does not apply to :

(1) "Bodily injury" or "property damage" arising out of, relating to or resulting from the actual or alleged existence, exposure, ingestion, inhalation, abatement, testing, monitoring, remediation, "enclosure", decontamination, repair or removal of "mold, mildew or fungus" in any form.

(2) Any loss, cost, expense or damages, whether actual or alleged, arising out of, relating to, or resulting from "mold, mildew or fungus" that arises from any cause whatsoever, whether caused by any act or omission of any insured or any third party, whether caused by chronic water intrusion into the building envelope, whether caused by the presence of water on or in any substance or substrate, whether caused by construction defects, whether caused by action or inaction of any insured or any third party, whether caused by any act of God, or whether caused by any combination of factors.

(3) "Bodily injury" or "property damage" or repair, replacement, remediation, decontamination or removal of any material or building structure or member arising out of the existence, exposure, ingestion, inhalation, abatement, testing, monitoring, "enclosure", "microbiological decontamination", remediation, repair or removal of any contaminant that causes any alleged chemical sensitivity.

We have no duty to defend any insured, investigate any "occurrence", offense or "suit" against any insured, settle any claim on behalf of any insured, or indemnify any insured with regard to any "occurrence", offense or "suit" that arises out of any contamination, "bodily injury" or "property damage" caused by or arising out of the existence of "mold, mildew or fungus" in any form whether the "mold, mildew or fungus" is the sole cause, concurrent cause, partial cause, or contributing cause of any damage or injury claimed.

If you investigate or defend any such "occurrence", offense or "suit", we have no duty to pay the expenses of the investigation or defense, nor do we have any duty to reimburse you.

B. The following definitions are added to the **DEFINITIONS** section of the policy:

(1). "Enclosure" means those procedures and operations required to construct an airtight, impermeable wall, ceiling or other permanent barrier around surfaces contaminated by a material or substance in order to prevent the discharge, dispersal, release or escape of any part of that material or substance.

(2). "Microbiological decontamination" means those activities, procedures or operations required to clean up, detoxify, dilute, remove or abate microorganisms, fungi, bacteria, allergens and other similar matter.

(3). "Mold, Mildew or Fungus" means any plant-like group that does not produce chlorophyll and derives food either by decomposing organic matter from dead plants and animals or by parasitic attachment to living organisms or any substance specifically or commonly referred to as mold, mildew or fungus.

All other terms, conditions and exclusions under the policy are applicable to this Endorsement and remain unchanged.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## ASCIC 98 67 10 02

## MICROBIOLOGICAL DECONTAMINATION LIMITED COVERAGE ENDORSEMENT

## THE COVERAGE AFFORDED UNDER THIS ENDORSEMENT IS WRITTEN ON A CLAIMS-MADE AND REPORTED BASIS

## CLAIM RELATED COSTS AND SUPPLEMENTARY PAYMENTS REDUCE THE LIMITS OF INSURANCE

This Endorsement shall not serve to increase our limits of insurance, as described in SECTION III - LIMITS OF INSURANCE.
The most we will pay for the coverage provided for Microbiological Decontamination:

$1,000,000_____Each Claim.

$1,000,000_____Aggregate.

In consideration of the payment of premiums, it is hereby agreed that the following changes are incorporated into the policy.

A.  The following shall be added to SECTION **A** of the CONTRACTOR'S POLLUTION LIABILITY COVERAGE Endorsement ASCIC 98 40 10 99:

Subject to all other terms, conditions and exclusions of the policy, we will pay those sums in excess of the self-insured retention that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" that takes place prior to the expiration or cancellation date of the policy, whichever is earlier, and subsequent to the Retroactive Date, as set forth in this Endorsement and because of "bodily injury" or "property damage" arising solely out of actual discharge, dispersal, release or escape of "microbial contaminants" caused solely by your performance of "microbiological decontamination" subsequent to the Retroactive Date set forth in this Endorsement and prior to the expiration or cancellation date of the policy, whichever is earlier in the "coverage territory". The "bodily injury" or "property damage" must first manifest itself during the policy period.

The insurance afforded under this Endorsement applies only if a "claim" for damages because of "bodily injury" or "property damage" is first made against and reported to us by, the insured, in writing, during the policy period. A "claim" by a person or organization seeking damages will be deemed to have been made at the earlier of the following times:

(a) When notice of such "claim" is received and recorded by us; or

(b) When we make a settlement in accordance with paragraph 1. above.

B.  The following exclusions are added to SECTION **B** of the CONTRACTOR'S POLLUTION LIABILITY COVERAGE Endorsement ASCIC 98 40 10 99

This insurance does not apply to any "claim" or "suit" "arising from"

7.  The discharge, release, escape, dispersal, contamination or exposure to "pollutants" in whatever form, which occurs after the completion of that part of "your work" involving "microbiological decontamination".

8.  Any "claim", "occurrence", incident or circumstance which occurred or of which the insured was aware prior to the Retroactive Date as set forth in this endorsement.

9.  The discharge, release, escape, dispersal, contamination or exposure to "microbial contaminants" in whatever form, which occurred prior to the Retroactive Date as set forth in this endorsement.

10. Or claimed by any of the following:

(a) Any related business enterprise which is operated, managed or owned, in whole or in part, by the insured, or

(b) A parent company of the insured, or

Copyright©2002  American Safety Casualty Insurance Company

(c) Any affiliated or subsidiary company of the insured.

11. Any "microbial contaminants" emanating from, existing at or relating to any premises, site, facility, structure or location owned by, occupied by, rented to or by, or leased to or by the insured.

12. Any goods, products or equipment manufactured, sold, handled, distributed, installed or disposed of by you, your subsidiaries, any entity which wholly or partly owns, operates or manages you or any subsidiary of such entity, others under license by you, your vendors or subcontractors or any other person or organization working directly or indirectly on your behalf.

13. Any insured's involvement as a partner, officer, director, stockholder, employer or "employee" of any business enterprise not named in the Declarations, or "arising from" any insured's involvement in "microbiological decontamination" rendered to or on behalf of any business enterprise not named in the Declarations that wholly or partly owns the insured or which to any extent controls, operates, or manages the insured, or that is wholly or partly owned by an insured, or in which an insured is an officer, partner, director or "employee", or which is to any extent controlled, operated, or managed by an insured.

14. Or based upon or arising out of any "mold, mildew, or fungus" growth or re-growth resulting from the failure to identify and or eliminate the source of moisture.

C. For the purpose of the coverage provided under this Endorsement, the following definitions are added to SECTION C of the CONTRACTOR'S POLLUTION LIABILITY COVERAGE Endorsement ASCIC 98 40 10 99:

"Microbial contaminants" means "mold, mildew or fungus", and bird and bat excrement.

"Mold, mildew or fungus" means any plant-like group that does not produce chlorophyll and derives food either by decomposing organic matter or by parasitic attachment to living organisms or any substance specifically or commonly referred to as mold, mildew or fungus.

"Microbiological decontamination" means those activities, procedures, or operations required to cleanup, detoxify, dilute, or remove "microbial contaminants", which are specifically identified in a written contract or written agreement to cleanup, detoxify, dilute, or remove such "microbial contaminants"

D. Solely with respect to the coverage afforded under this Endorsement, the definition of "bodily injury" as described in SECTION V of the policy shall be amended to include the ingestion or inhalation of "microbial contaminants", which are specifically identified in a written contract or written agreement to cleanup, detoxify, dilute, or remove such "microbial contaminants".

E. The following Conditions are added under SECTION IV of the policy:

19. **Reports.**

A condition precedent to coverage under the policy shall be for the insured to notify us in writing of any "microbiological decontamination" incident as soon as possible, and in any event, not later than ten (10) days after any "supervisory employee" becomes aware of any such event.

F. Solely as respects the coverage provided by this Endorsement, the following EXTENDED REPORTING PERIOD OPTION is hereby added:

**EXTENDED REPORTING PERIOD OPTION**

1. Automatic Extended Reporting Period

Upon termination of this policy for any reason other than non-payment of premium or non-compliance with the terms and conditions of this policy, a "claim" first made against the insured and reported to us, in writing, within 30 days of the end of the policy period will be deemed to have been made on the last day of the policy period, provided that the "claim" is for "loss" because of "bodily injury" or "property damage" because of "microbiological decontamination" in the "coverage territory" provided:

(a) The "bodily injury" or "property damage" takes place subsequent to the Retroactive Date as set forth in this Endorsement and before the end of the policy period;

(b) The "bodily injury" or "property damage" first manifests itself subsequent to the Retroactive Date

Copyright©2002 American Safety Casualty Insurance Company

as set forth in this Endorsement and before the end of the policy period; and

(c) The "loss" arises out of the performance of "microbiological decontamination" subsequent to the Retroactive Date as set forth in this Endorsement and before the end of the policy period.

All coverage shall be subject to all of the policy terms, conditions and exclusions. The Automatic Extended Reporting Period shall only apply if no other similar insurance is in force at the time of the Automatic Extended Reporting Period. The Automatic Extended Reporting Period shall not in any way reinstate or increase the Limits of Insurance or extend the policy period.

2. Optional Extended Reporting Period

   This Section applies only if:

   a. We cancel or non-renew this policy for any reason except non-payment of the premium or non-compliance with the terms and conditions of this policy; or

   b. We renew or replace this policy with other "microbiological decontamination" liability insurance that:

      (1) Provides claims-made coverage for "bodily injury" or "property damage" liability, and

      (2) Has a Retroactive Date later than the one as set forth in this Endorsement.

3. If we provide the Extended Reporting Period Endorsement:

   a. A "claim" first made against the insured and reported to us in writing within one year after the end of the policy period will be deemed to have been made on the last day of the policy period, provided that the "claim" is for "loss" because of "bodily injury" or "property damage" because of a "microbiological decontamination" in the "coverage territory" subsequent to the Retroactive Date as set forth in this Endorsement and before the end of the policy period provided:

      (1) The "bodily injury"or "property damage" takes place subsequent to the Retroactive Date as set forth in this Endorsement and before the end of the policy period;

      (2) The "bodily injury"or "property damage" first manifests itself subsequent to the Retroactive Date as set forth in this

Endorsement and before the end of the policy period; and

(3) The "loss" arises out of the performance of "microbiological decontamination" subsequent to the Retroactive Date as set forth in this Endorsement and before the end of the policy period.

b. The Extended Reporting Period, if purchased, is available by endorsement and cannot be renewed. All coverage during the Extended Reporting Period is subject to all of the policy terms, conditions and exclusions. The Extended Reporting Period, if purchased, starts on the effective termination date of this policy.

c. The Extended Reporting Period Endorsement will not reinstate or increase the Limits of Insurance or extend the policy period.

4. We will issue this Endorsement if the first Named Insured shown in the Declarations:

   a. Makes a written request for the Extended Reporting Period which we receive within 30 days after the end of the policy period; and

   b. Promptly pays the additional premium when due.

   The Extended Reporting Period Endorsement will not take effect unless the additional premium is paid when due.

5. We will determine the actual premium for the Extended Reporting Period Endorsement in accordance with our rules and rates. In doing so, we may take into account the following:

   a. The exposures insured;

   b. Previous types and amounts of insurance;

   c. Limits of Insurance available under this policy for future damages; and

   d. Other related factors.

G. It is hereby agreed and understood that the coverage afforded under this Endorsement shall be subject to a Retroactive Date described as follows:

| RETROACTIVE DATE: | 12/2/2002 |
|---|---|

H.  It is hereby agreed and understood that the coverage afforded under this Endorsement shall be subject to a self-insured retention described as follows:

### SCHEDULE

| Amount and Basis of Self-Insured Retention | |
|---|---|
| $25,000 | per claim |

1.  Our obligation under the policy to pay damage to you or on your behalf applies only to the amount of damages in excess of any self-insured retention amounts stated in the Schedule above as applicable to such coverages, and the limits of insurance applicable to such coverages will not be reduced by the amount of such self-insured retention. The self-insured retention amount shall apply to all Coverage Parts existing in or attaching to the policy, unless otherwise indicated separately in a Coverage Part or endorsement attaching to the policy.

    As a condition precedent to our obligations to provide or continue to provide indemnity, coverage or defense hereunder, the insured, upon receipt of notice of any "claim", "suit" or incident that may give rise to a "claim" or "suit", and at our request, shall pay over and deposit with us all or any part of the self-insured retention amount as specified in the policy, requested by us, to be applied by us as payment toward any damages incurred in the handling or settlement of any such "claim" or "suit".

2.  The self-insured retention amounts stated in the Schedule apply as follows:

    **Per Claim Basis** - if the self-insured retention is on a "per claim" basis, the self-insured retention amount applies separately to all damages and separately to each "claim" because of "bodily injury" or "property damage" sustained by any one person or organization as the result of any one "microbiological decontamination" incident.

All other terms, conditions and exclusions under the policy are applicable to this Endorsement and remain unchanged.

Copyright©2002  American Safety Casualty Insurance Company

## COMMERCIAL GENERAL LIABILITY

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### ASCIC 98 100 04 02

# WAR OR TERRORISM EXCLUSION

This Endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

A. Exclusion j. under Paragraph **2., Exclusions of Section I – Coverage A – Bodily Injury And Property Damage Liability** is replaced by the following:

**2. Exclusions**

This insurance does not apply to:

**j. War Or Terrorism**

"Bodily injury" or "property damage" arising, directly or indirectly, out of:

(1) War, including undeclared or civil war; or

(2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

(3) Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these; or

(4) "Terrorism", including any action taken in hindering or defending against an actual or expected incident of "terrorism"

regardless of any other cause or event that contributes concurrently or in any sequence to the injury or damage.

In the event of any incident of "terrorism" that is not subject to the Terrorism Exclusion, coverage does not apply to any loss or damage that is otherwise excluded under this Coverage Part.

Multiple incidents of "terrorism" which occur within a seventy-two hour period and appear to be carried out in concert or to have a related purpose or common leadership shall be considered to be one incident.

B. The following exclusion is added to part (a) of Paragraph **2., Exclusions of Section I, Coverage B – Personal And Advertising Injury Liability:**

**2. Exclusions**

This insurance does not apply to:

(15) **War Or Terrorism**

"Personal and advertising injury" arising, directly or indirectly, out of:

(1) War, including undeclared or civil war; or

(2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

(3) Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these; or

(4) "Terrorism", including any action taken in hindering or defending against an actual or expected incident of "terrorism"

regardless of any other cause or event that contributes concurrently or in any sequence to the injury.

C. Exclusion **h.** under Paragraph **2., Exclusions of Section I – Coverage C – Medical** Payments does not apply.

D. The following definition is added to **Section V** Definitions :

American Safety Casualty Insurance Company
Includes copyrighted material of ISO Properties, Inc. with its permission.
Copyright, ISO Properties, Inc., 2001

(34) "Terrorism" means activities against persons, organizations or property of any nature:

    **a.** That involve the following or preparation for the following:

        (1) Use or threat of force or violence; or

        (2) Commission or threat of a dangerous act; or

        (3) Commission or threat of an act that interferes with or disrupts an electronic, communication, information, or mechanical system; and

    **b.** When one or both of the following applies:

        (1) The effect is to intimidate or coerce a government or the civilian population or any segment thereof, or to disrupt any segment of the economy; or

        (2) It appears that the intent is to intimidate or coerce a government, or to further political, ideological, religious, social or economic objectives or to express (or express opposition to) a philosophy or ideology.

American Safety Casualty Insurance Company
Includes copyrighted material of ISO Properties, Inc. with its permission.
Copyright, ISO Properties, Inc., 2001