UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
SAFEWAY ENVIRONMENTAL CORP.,　:
　　　　　　　　　　　　　　　　　　　　08 Civ. 6977 (WHP)
　　　　　　　　Plaintiff,　　　　　　:
　　　　　　　　　　　　　　　　　　　　MEMORANDUM & ORDER
　　-against-　　　　　　　　　　　　:

AMERICAN SAFETY INSURANCE CO.,　:

　　　　　　　　　　　　　　　　　　　:
　　　　　　　　Defendant.
------------------------------------X

WILLIAM H. PAULEY III, District Judge:

　　　　　Plaintiff Safeway Environmental Corporation ("Safeway") brings this action for breach of contract against Defendant American Safety Casualty Insurance Company ("ASCIC") to recover insurance premiums. The sole issue in dispute concerns revenues Safeway derived from two projects for the City of Philadelphia and whether those revenues were properly included in the calculation of Safeway's insurance premium. Both parties move for summary judgment. For the following reasons, Plaintiff's motion is granted and Defendant's motion is denied.

## BACKGROUND

　　　　　Safeway is an asbestos abatement and demolition company. (Plaintiff's Rule 56.1 Statement dated Aug. 31, 2009 ("Pl. 56.1 Stmt.") ¶ 1.) ASCIC insured Safeway against bodily injury and property damage through a Commercial General Liability and Contractor's Pollution Liability Policy. (Affidavit of Peter Poveromo dated Aug. 31, 2009 ("Poveromo Aff.") Ex C:

-1-

Commercial General Liability and Contractor's Pollution Liability Policy dated Dec. 1, 2004 ("ASCIC Policy") at 4.) The ASCIC Policy had a $10 million general aggregate limit. ((Defendant's Responses and Counter-Statement to Plaintiff's Local Civil Rule 56.1 Statement ("Def. Counter-Stmt.")¶3.) Section IV(4) of the ASCIC Policy states that it "is primary, except . . . it is excess over any other insurance that is valid and collectible insurance to the Insured or any Additional Insured whether such insurance is primary, excess, contingent or on any other basis." (ASCIC Policy at 13.) ASCIC had "no obligation to provide defense or indemnity for any 'claim' or 'suit' for which such other insurance exists until such time as the limits of such other insurance are exhausted by the payment of 'claims 'or 'suits.'" (ASCIC Policy at 13.)

Section IV(5) of the ASCIC Policy provides that premiums are determined based on Safeway's "revenues" or "gross revenues" during the policy period. (Def. Counter-Stmt.¶5; ASCIC Policy, at 3; Declaration of Eric A Portuguese dated Sept. 21, 2009 ("Portugese Decl.") Ex. D: Insurance Binder for Safeway Environmental Corp. ("December 2004 Binder") at 4.) Safeway paid an estimated premium at the beginning of each policy period. An audit was conducted at the end of the policy period to determine whether Safeway owed additional premiums or was entitled to a refund. (Def. Counter-Stmt.¶5.) The ASCIC Policy also provided that "[ASCIC's] rules and rates with respect to premium computation are incorporated herein and made a part of the policy." (Def. Counter-Stmt.¶6.)

ASCIC calculated Safeway's premium in a two-step process. First, ASCIC enganged Overland Solutions, Inc. to collect Safeway's revenue information. (Def. Counter-Stmt.¶14.) Second, based on that information, ASCIC calculated the premium by identifying the

revenue Safeway generated from a project ("exposure") and multiplying it by 4.13208 percent. The ASCIC Policy provides an example of that calculation: a $10,750,000 "Asbestos Abatement" project would yield a premium of $444,199. (Def. Counter-Stmt.¶6; ASCIC Policy at 2-3.)

During the policy period, Safeway performed work on the demolition of two housing projects for the City of Philadelphia (the "Philadelphia Projects"). (Def. Counter-Stmt.¶ 21.) The City of Philadelphia purchased a comprehensive liability insurance policy known as an "Owner Controlled Insurance Program" policy (the "Philadelphia OCIP") for the Philadelphia Projects. (Pl. 56.1 Stmt.¶8; Def. Counter-Stmt.¶8.) It covered all contractors and subcontractors on the projects for damages and defense costs arising out of personal injury, property damage, and wrongful death claims. (Pl. 56.1 Stmt.¶8; Def. Counter-Stmt.¶8.) Because the Philadelphia OCIP Policy covered all contractors, Safeway was relieved from obtaining its own insurance for the Philadelphia Projects. (Pl. 56.1 Stmt.¶9; Def. Counter-Stmt.¶9.) Indeed, the City of Philadelphia required Safeway to give it a credit for insurance premiums it would otherwise have paid absent the OCIP policy. (Pl. 56.1 Stmt.¶9; Def. Counter-Stmt.¶9.) The Philadelphia OCIP provided $4 million in Commercial General Liability Coverage, $10 million in Contractor's Pollution Liability Coverage, and $50 million in Excess Liability Coverage. (Pl. 56.1 Stmt.¶11; Def. Counter-Stmt.¶11.)

As part of the annual audit, ASCIC included $2,447,993 in gross revenue from the Philadelphia Projects for which it charged a premium of $101,151.07. (Pl. 56.1¶15; Def. Counter-Stmt.¶15.) Ironically, ASCIC excluded revenues from another Safeway project—one

insured by ASCIC under a site-specific policy—in the same audit. (Pl. 56.1 ¶ 16; Def. Counter-Stmt. ¶ 16.)

Safeway demands ASCIC return $101,151.07 in alleged overpayments. ASCIC moves to keep the premium.

## DISCUSSION

I.  Summary Judgment Standard

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Davis v. Blige, 505 F.3d 90, 97 (2d Cir. 2007). Even where both parties have moved for summary judgment, "neither motion may be granted unless one party is entitled to it as a matter of law upon genuinely undisputed facts." Rhoads v. McFerran, 517 F.2d 66, 67-68 (2d Cir. 1975) (per curiam) (citations omitted). The burden of demonstrating the absence of any genuine dispute rests with the moving party. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970).

In determining whether there is a genuine issue as to any material fact, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [its] favor." Liberty Lobby, 477 U.S. at 255; Jeffreys v. City of N.Y., 426 F.3d 549, 553 (2d Cir. 2005). "[E]ach party's motion must be examined on its own merits, and in each case all reasonable inferences must be drawn against the party whose motion is under consideration." Morales v. Quintel Entertainment, Inc., 249 F.3d 115, 121 (2d Cir. 2001).

## II. The ASCIC Policy

Under New York law, the initial interpretation of a contract "is a matter of law for the court to decide." K. Bell & Assocs., Inc. v. Lloyd's Underwriters, 97 F.3d 632, 637 (2d Cir. 1996); R/S Assocs. v. N.Y. Job Dev. Auth., 771 N.E.2d. 240, 242 (N.Y. 2002). "An insurance contract is interpreted to give effect to the intent of the parties as expressed in the clear language of the contract," Morgan Stanley Group Inc. v. New England Ins. Co., 225 F.3d 270, 275 (2d Cir. 2000). If only one reasonable interpretation exists, the words are given effect as written. United Nat'l Ins. Co. v. Waterfront N.Y. Realty Corp., 994 F.2d 105, 107 (2d Cir.1993) (applying rule to insurance contracts). Thus, a court must determine first if the contract is ambiguous, mindful that extrinsic evidence is inadmissible to create an ambiguity. Duane Reade Inc. v. St. Paul Fire & Marine Ins. Co., 411 F.3d 384, 390 (2d Cir. 2005); Readco Inc. v. Marine Midland Bank, 81 F.3d 295 299 (2d Cir. 1996) (citation omitted).

An ambiguity exists "where the terms of an insurance contract could suggest <u>more than one meaning</u> when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business." Morgan Stanley, 225 F.3d at 275 (citations omitted) (emphasis added). Conversely, an unambiguous contract has "a definite and precise meaning, unattended by danger of misconception . . . [for which] there is no reasonable basis for a difference in opinion." Seiden Assocs., Inc. v. ANC Holdings, Inc., 959 F.2d 425, 428 (2d Cir. 1992) (quoting Hunt Ltd. v. Lifschultz Fast Freight, Inc., 889 F.2d 1274, 1277 (2d Cir.1989)). Furthermore, "the language of a contract is not made ambiguous simply because the parties urge different interpretations . . . [n]or does ambiguity

exist where one party's view 'strain[s] the contract language beyond its reasonable and ordinary meaning.'" Seiden, 959 F.2d at 428 (citations omitted).

Where an insurance contract is ambiguous, "the court may accept any available extrinsic evidence to ascertain the meaning intended by the parties during formation of the contract." Morgan Stanley, 225 F.3d at 275 (citations omitted). "If the court must resort to extrinsic evidence to ascertain the correct and intended meaning of a term, material questions of fact necessarily exist;" that is, "where there is relevant extrinsic evidence of the parties' actual intent, then the contract's meaning becomes an issue of fact precluding summary judgment." Alexander & Alexander Servs., Inc. v. These Certain Underwriters at Lloyd's, London, 136 F.3d 82, 86 (2d Cir. 1998) (citing Seiden, 959 F.2d at 428). "Consequently, only where the court finds that the terms are unambiguous, or where no extrinsic evidence exists, may it properly grant summary judgment to one of the parties." Alexander, 136 F.2d at 86 (citing Seiden, 959 F.2d at 428).

A plain reading of the ASCIC Policy reveals but one reasonable interpretation— "gross revenue" in the calculation of premiums includes all monies earned from projects that ASCIC actually insured. To accept ASCIC's argument that "revenue" or "gross revenue" includes every dollar earned by Safeway during the policy period irrespective of its source is contrary to the plain language and structure of the parties' agreement. ASCIC's argument wrenches "gross revenue" from its context, morphs it into "gross sales," and then engrafts the Webster's Dictionary definition ("all goods or products, sold or distributed"). Such a contorted analysis transmogrifies the insurance contract into something other than what Safeway and ASCIC bargained for. See Windows, Inc. v. Jordan Panel Sys. Corp., 177 F.3d 114, 119 (2d Cir.

1999) (Parker, J., concurring) (noting that even "delivered to" and "delivered at" in certain contexts are not synonymous).

The ASCIC Policy clearly and unambiguously ties premiums to ASCIC's exposure to risk. Section IV(5)(a) provides, "ASCIC will compute all premiums for this Coverage Part in accordance with our rules and rates." Under the heading "Rates," ASCIC shows the precise calculation of "Expected Premium" as a percentage (4.13208%) of "Exposure" from a covered Safeway project. Because the premiums are based on the level of exposure, it would be contrary to the intent of the contract to include revenues derived from projects outside of ASCIC's coverage. Moreover, it is unreasonable to assume that sophisticated businesses like the parties in this case, dealing at arms length, intended to pay or collect premiums for no risk exposure. See Stoney Run Co. v. Prudential-LMI Commercial Ins. Co., 47 F.3d 34, 37 (2d Cir. 1995) (applying the "reasonable expectation and purpose of the ordinary businessman" in construing an insurance policy).

This interpretation is buttressed by the fact that ASCIC did not calculate revenues for separately insured projects, such as Safeway's Mott Haven Project, as long as the other insurer was ASCIC. Because of its site-specific policy for the Mott Haven Project, ASCIC faced no risk of claims on its general policy. The same is true with respect to the Philadelphia Projects because the Philadelphia OCIP shielded ASCIC from potential liability. To include revenues in the premium calculation only because Safeway was required to use another insurer would give ASCIC a windfall. Without actual exposure, ASCIC cannot collect a premium. See e.g., Group Life & Health Ins. o. v. Royal Drug Co., 440 U.S. 205, 213 (1979) ("[We have described] the 'earmark' of insurance . . . as the 'underwriting of risks' in exchange for a premium.").

## CONCLUSION

For the foregoing reasons, Safeway Environmental Corporation's motion for summary judgment (Docket No. 23) is granted. Defendant American Safety Casualty Insurance Company's motion for summary judgment (Docket No. 16) is denied. The parties shall submit a proposed final judgment by February 5, 2010. The Clerk of Court is directed to terminate all pending motions and mark this case closed.

Dated: January 28, 2010
      New York, New York

SO ORDERED:

_____
WILLIAM H. PAULEY III
U.S.D.J.


*Counsel of Record:*

Jeffrey S. Ettenger, Esq.
Kaufman Dolowich & Voluck, LLP
135 Crossways Park Drive
Suite 201
Woodbury, NY 11797
*Counsel for Plaintiff*

Eric Arthur Portuguese, Esq.
Lester, Schwab, Katz and Dwyer, LLP
120 Broadway
New York, NY 10271
*Counsel for Defendant*